**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

**IN RE:**

**LEE MIN HO CHEN**

**Debtor(s)**

**CASE NO. 11-08170 BKT**

**Chapter 11**

**FILED & ENTERED ON 11/09/2012**

## OPINION AND ORDER

The proceeding before the court is Doral Bank's ("Doral") Opposition to Second Amended Plan of Reorganization [Dkt. No. 190] and Debtor's Reply to Doral Bank's Opposition to Second Amended Plan of Reorganization [Dkt. No. 203]. For the reasons stated below, the confirmation of the Debtor's Second Amended Plan of Reorganization ("Plan") [Dkt. No. 177] is hereby DENIED.

In its opposition, Doral asserts that Debtor's Plan should not be confirmed, because the Plan contains the same substantive deficiencies and issues as the Debtor's first Plan, filed on May 18, 2012. Their argument is three-fold. First, the Plan violates the absolute priority rule and does not satisfy the cramdown requirements of 11 U.S.C. § 1129(b)(2)(B)(ii) in that it is not fair and equitable to dissenting creditors. Specifically, Doral points out that Debtor proposes to retain almost all of her pre-petition property and pay less than 0.05% of their claims to the general unsecured creditors. Further, the Debtor's Plan does not qualify for the new value exception under the absolute priority rule because the new value does not come from an outside source, but rather from the Debtor herself.[1] Second, the Debtor cannot claim a tacit acceptance of the Plan because a logical and literal

---

[1] The Debtor's proposed new value as provided in the Plan consists of the sale of her two vehicles, in particular, her 2005 BMW 330i and 2004 Mercedes Benz CLK-500.

reading of 11 U.S.C. § 1129(a)(10) requires an active acceptance of the Plan by unimpaired classes in order to satisfy the cramdown requirements in 11 U.S.C. § 1129(b)(2)(B)(ii). Third, the Plan fails to comply with the confirmation requirements under 11 U.S.C. § 1129(a) because:

(a)     [the] Plan's projections are unrealistic and thereby do not reflect the historical reality of Debtor's prior revenues, not accounts, for probable contingencies within the Debtor's business.

(b)     the Plan's projections demonstrate that Debtor will not generate sufficient income to satisfy her Plan obligations while retaining her property. More specifically, the Debtor plans to contribute $14,790 monthly rental income generated by her realproperties. However, Doral points out that the majority of the Debtor's income comes from the 100 Fortaleza St. building, which generates only $9,000 per month. The majority of the tenants hold leases for no greater than one (1) year each with the Plan lacking any contemplation on turnover periods between tenants. Yet, the Debtor proposes repayment terms of up to thirty (30) years and thus demonstrates repayment uncertainty. Further, Debtor's projections do not contain a provision for payment of ordinary maintenance and repairs for any of her income producing rental properties.

(c)     the Plan includes an additional $2,000.00 in professional services income that was never disclosed to the creditors nor to the court in the previous plan to be approved under 11 U.S.C. § 363(b)(1). Further, Doral points out that the Debtor never supplied concrete evidence demonstrating certainty of such contractual agreement.

(d)     the Plan fails to provide to the unsecured creditors at least an amount equal to the Debtor's disposal income during the next five years in accordance with 11 U.S.C. § 1129(a)(15). More specifically, the Debtor proposes to pay unsecured creditors approximately 0.492% of the total claims, yet the Debtor failed to demonstrate that such distribution at least equals the Debtor's disposal income during the next five years.

(e)     the Plan failed to comply with additional requirements as mandated by 11 U.S.C. § 1129(a)(1)-(2). More specifically, that the Debtor did not obtain court approval for the use of certain real property outside the ordinary course of business as required by 11 U.S.C. § 363(b)(1) and Fed. R. Bankr. P. 6004. Further, the Debtor seems to request a discharge upon Plan confirmation in violation of 11 U.S.C. § 1141(d)(5), which does not allow a discharge until all Plan payments are complete.

(f)     the Plan failed to comply with 11 U.S.C. § 1129(a)(8). More specifically, the Debtor has not filed a § 1129 statement demonstrating acceptances or rejections of the Plan by all unimpaired classes.

Conclusively, Doral requests the court to reject the Plan because it violates the requirements of 11 U.S.C. § 1129(a)(1),(2), (8), (11), (15), and (b)(2)(B).

In her rebuttal, the Debtor contends that the Plan is not speculative because the $14,790 from her real property will come from not only the Fortaleza Street and the Condado Comelot properties, but also properties in Hawaii.[2] Further, the Debtor contends that the projections included a provision of $700 per month for any necessary repairs and extraordinary maintenance.[3] Lastly, her professional service contract is from a life long friend, who had previously offered her such position. Debtor also contends that she complied with the following:

(a) 11 U.S.C. § 1129(a)(15) because she is proposing a 5.64% rather than a 0.492% distribution to unsecured creditors;

(b) 11 U.S.C. § 1129(a)(1)-(2) because Doral's allegations have no merit;[4]

(c) 11 U.S.C. § 1129(a)(8) because she disclosed in the § 1129 statement that she will be going forward with her Plan under § 1129(b).

The Debtor further contends that the absolute priority rule does not apply to individual chapter 11 cases and even if it does, she is excepted by providing new value. Specifically, the Debtor contends that the court should adopt a broad interpretation of the absolute priority rule as opposed to a narrow interpretation. Under the broad interpretation of the rule, 11 U.S.C. § 1115 includes pre-petition property specified in section 541 as well as post-petition earnings. Therefore, the exemption added in 11 U.S.C. § 1129(b)(2)(B)(ii) abolished the absolute priority rule in individual chapter 11 cases. The Debtor further added that even if the court adopts the narrow view, the new value exception applies because she is voluntarily contributing all her valuable exempt assets such as her vehicles and post-petition wages to fund her Plan. Thus, the Debtor is providing new value to the

---

[2]Debtor points out the income generated from these properties will be able to cover not only the repayments but also the majority of the maintenance charges.

[3] Debtor clarified that maintenance has been continuous at the Fortaleza street location and that prior safety hazards have been fixed, therefore, further improvements will not be necessary to generate the necessary income.

estate in order to contribute to the Plan.

This court joins courts in its sister circuits, in particular the Fourth Circuit[5] and the Ninth Circuit,[6] in adopting the narrow view of the absolute priority rule.

## I. Factual Background

On September 26, 2011, Debtor Lee Min Ho Chen filed a voluntary chapter 11 petition for reorganization. Subsequently, on May 18, 2012, Debtor filed her first amended disclosure statement, which was approved by the court on July 20, 2012. On September 24, 2012, the court held a hearing concerning the valuation of Debtor's real property and granted Debtor an extension until October 10, 2012 to file an amended plan of reorganization. On the same day, the court scheduled a hearing on October 31, 2012 to consider the confirmation of the Plan. Debtor filed her second amended plan of reorganization on October 10, 2012. On October 24, 2012, Doral filed its Opposition in support of the denial of Debtor's second amended Plan.

## II. Legal Analysis and Discussion

### A. Absolute Priority Rule

The arguments presently before the court center on the question of whether the absolute priority rule applies in chapter 11 bankruptcy cases of individual debtors after BAPCPA. Because the approval of the Debtor's second amended Plan hinges on this instant question, the court shall begin its analysis here.

Recognizing the sharp circuit splits on this question, the circuits struggled with two interpretations of the post-BAPCPA code. Some courts held that the rule does not apply to individual

---

[4] Debtor in her reply did not discuss why Doral's contentions have no merit.

[5] "Because we conclude, based on our analysis of the specific and broader context of the BAPCPA, that Congress did not intend to repeal the absolute priority rule for individual debtors in Chapter 11 cases…." In re Maharaj, 681 F.3d 558, 574 (4th Cir. 2012) (internal citations and quotations omitted).

chapter 11 debtors based on the so-called "broad" view of property of the estate that an individual debtor may retain under a confirmed plan pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii). See In re Tegeder, 369 B.R. 477, 479–481 (Bankr.D.Neb.2007); In re Roedemeier, 374 B.R. 264, 273–276 & nn. 15–19 (Bankr.D.Kan.2007); In re Shat, 424 B.R. 854, 862–868 (Bankr.D.Nev.2010); SPCP Group, LLC v. Biggins, 465 B.R. 316, 320–324 (M.D.Fla.2011); Friedman v. P+P, LLC (In re Friedman), 466 B.R. 471 (9th Cir. BAP 2012); see also In re Johnson, 402 B.R. 851, 852–853 (Bankr.N.D.Ind.2009) (dicta that individual chapter 11 debtor's plan need not satisfy the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii)); In re Hockenberry, 457 B.R. 646, 660–661 & n.14 (Bankr.S.D.Ohio 2011) (collecting cases on issue, but not reaching the issue because case decided on other grounds). While other courts held that the absolute priority rule still applies and thereby adhering to the so-called "narrow" view of property of the estate that an individual debtor may retain in a chapter 11 plan. See In re Arnold, 471 B.R. 578, 587-88 (Bankr.C.D.Cal.2012); In re Gbadebo, 431 B.R. 222, 227–230 (Bankr.N.D.Cal.2010); In re Mullins, 435 B.R. 352, 359–361 (Bankr.W.D.Va.2010); In re Gelin, 437 B.R. 435, 440–443 (Bankr.M.D.Fla.2010); In re Stephens, 445 B.R. 816, 820–821 (Bankr.S.D.Tex.2011); In re Walsh, 447 B.R. 45, 47–49 (Bankr.D.Mass.2011); In re Maharaj, 449 B.R. 484, 491–494 (Bankr.E.D.Va.2011); In re Draiman, 450 B.R. 777, 820–822 (Bankr.N.D.Ill.2011); In re Kamell, 451 B.R. 505, 507–512 (Bankr.C.D.Cal.2011); In re Lindsey, 453 B.R. 886, 891–905 (Bankr.E.D.Tenn.2011); In re Karlovich, 456 B.R. 677, 679–682 (Bankr.S.D.Cal.2010); In re Lively, 467 B.R. 884 (Bankr.S.D.Tex.2012); see also In re Friedman, 466 B.R. at 484–492 (Jury, J., dissenting). Taking both interpretations into consideration, this court finds the reasoning and the logic behind the narrow

[6] In re Arnold, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012) (Court declined to follow the BAP opinion and adopted the narrow view of the absolute priority rule); see generally In re Kamell, 2011 Bankr. LEXIS 1738 (Bankr. C.D. Cal. May 4, 2011); In re Gbadebo, 431 B.R. 222 (Bankr. N.D. Cal. April 16, 2010).

approach the most compelling. Therefore, this court concludes that the absolute priority rule still applies to individual chapter 11 debtors.

Congress established chapter 11 of the Bankruptcy Code to create a statutory system for business reorganization and thus providing American businesses with a second chance.[7] In essence, reorganization provides for changes in a business' debt obligations. Thus, the ultimate goal of reorganization is to transform a business to a new operating model and prepare it for future success. United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983) (citing H.R.Rep. No. 95–595, p. 220 (1977)). However, although chapter 11 provides a business with a second chance, this second chance is far from absolute. Rather, "[c]hapter 11 strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." Florida Department of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 51 (citing Toibb v. Radloff, 501 U.S. 157, 163 (1991)). This balance serves "[c]hapter 11's twin objectives of preserving going concerns and maximizing property available to satisfy creditors." Id. at 50 (quoting Bank of America National Trust & Savings Assn. v. 203 North LaSalle Street Partnership, 526 U.S. 434, 453 (1999)).

Consequently, more entities than individuals file chapter 11 cases. Warren, Chapter 11: Reorganizing American Businesses at 4. ("About 90 percent of the chapter 11 filers are legal fictions, mostly corporations, with a few LLCs and partnerships thrown in.") Regardless, individuals as well may file chapter 11 cases. The trade-off of filing a chapter 11 case is that although there are fewer restrictions to file, only a few make it out of a chapter 11 case with an approved plan. Chapter 11 filings facilitate an on-going conversation between the debtor and the creditors, and thereby a general

---

[7]11 U.S.C. § 1101 et seq.; 5 Norton Bankr. L. & Prac. 3d § 91:1; Elizabeth Warren & Jay Westbrook, *Success of Chapter 11: A Challenge to the Critics*, 107 MICH. L.REV. 603 (2009).

consensus majority of the creditors must confirm such plan.[8] Without a general consensus from the creditors, debtors rarely can succeed in confirming such plan since "[c]onfirmation is the final settlement of the rights of the parties." Id. at 134.

In order for a plan to be confirmed with general consensus, the plan must meet the sixteen requirements under 11 U.S.C. § 1129(a). 11 U.S.C. § 1129(a)(1)-(16). Amongst these requirements, section 1129(a)(8) mandates a voting requirement and therefore, "[w]ith respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8). Further, "[a] class of creditors has accepted a plan under the Code if such plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors ... that have accepted or rejected such plan." Kane v. Johns-Manville Corp., 843 F.2d 636, 646 (2d Cir. 1988) (internal quotations omitted);11 U.S.C. § 1126(c) (1982). On the contrary, "[a] class is impaired if the plan does not provide it with full payment in cash of its claims on the date the plan becomes effective." In re Bonner Mall P'ship., 2 F.3d 899, 905 n. 17 (9th Cir. 1993); 11 U.S.C. § 1124(3)(A).

Regardless, even if section 1129(a)(8) is not met, the bankruptcy court shall still confirm such chapter 11 plan if the following three conditions are met: (1) the plan must meet all other requirements for confirmation to be met; (2) that the plan is fair and equitable; and (3) the plan does not discriminate unfairly to those that have been impaired and to those that have yet to accept the plan. 11 U.S.C. § 1129(b)(1). This is commonly known as a "cramdown" since the plan is forcibly crammed down the throats of objecting and silent classes of creditors. Id.; In re Seasons Partners, LLC, 439 B.R. 505, 516 (Bankr. D. Ariz. 2010); Till v. SCS Credit Corp., 541 U.S. 465, 468-69 (2004).

---

[8] Elizabeth Warren, Chapter 11: Reorganizing American Businesses at 133 (2008).

In determining what constitutes fair and equitable, the plan must meet the absolute priority rule. The absolute priority rule demands that the holder of any claim of interest that is junior to the claims of an impaired class may not receive or retain the plan on account of such junior claim or interest in any property. 11 U.S.C. § 1129(b)(2)(B)(ii); <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 202 (1988). In other words, the absolute priority rule "restricts the debtor-in-possession's use of the cramdown by requiring that equity holders retain no ownership in the reorganizing business unless superior classes either have accepted the plan or received payment in full… [Therefore] [i]f the DIP wants to confirm a plan that includes retaining equity ownership, it will either have to pay the creditors in full or negotiate for their cooperation…." <u>In re Arnold</u>, 471 B.R. 578, 593 (Bankr. C.D. Cal. 2012).

11 U.S.C. § 1129(b)(2)(B)(i)-(ii) provides for two options in guiding what constitutes fair and equitable for the unsecured class of creditors:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that is impaired under, and has not accepted, the plan.
>   (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>   ...

(B) With respect to a class of unsecured claims—

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

11 U.S.C. § 1129(b). Summarily, this provision mandates that in order for a plan to be approved, a

plan may not give property to holders of any junior claims of interests "…unless all classes of senior claims either received full value of their claims or gave their consent." In re DBSD North America, Inc., 634 F.3d 79, 88 (2d Cir.2011).

Prior to the 2005 BAPCPA, the absolute priority rule was a judicially created doctrine to reflect the common law principle that creditors would be paid ahead of equity. This is to provide some protection to the creditors in case of business dissolution. In re Arnold, 471 B.R. 578, 595-96 (Bankr.C.D.Cal.2012). In essence, "[t]he absolute priority rule is central to the law of corporate reorganizations because it is the source of substantive rights as well as the procedural protections that each participant in reorganization enjoys. Parties can insist that the priority rights they enjoyed outside of bankruptcy be respected inside. Nevertheless, every junior party, including the shareholders, can invoke elaborate procedures before their rights are compromised. The absolute priority rule allows the senior parties to insist on full payment, but it also grants all junior parties those procedural protections necessary for a just reorganization." Id.

In light of the above historical considerations, the court now addresses the question of whether Congress in enacting BAPCPA abrogated the absolute priority rule for chapter 11 individual debtors by amendment of section 1129(b)(2)(B)(ii) and its addition of section 1115 to the Bankruptcy Code.

**1.       Post-BAPCPA Reconciliation of Sections 1129(b)(2)(B) and 1115**

Section 321(c) of the 2005 BAPCPA provided an exception for the absolute priority rule for individual chapter 11 debtors by adding the following statutory language, "except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section." 11 U.S.C. § 1129(b)(2)(B)(ii). Therefore, this provision raises the inquiry into defining the phrase "property

included in the estate under section 1115" or just what kind of property and how much of such property can an individual debtor in a confirmed chapter 11 reorganization plan retain. In re Walsh, 447 B.R. 45, 48 (Bankr. D. Mass. 2011); In re Lindsey, 453 B.R. at 891–892. In interpreting this phrase, the court looks to the statutory language of § 1115, which provides:

> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and

> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. § 1115(a).

Section 1115 can be interpreted in two ways: (1) narrowly, to include only the additional post-petition property already brought into the chapter 11 case by section 1115(a) or (2) broadly, to include not only the additional post-petition property but also all of the property brought into the chapter 11 case by section 541 including the property that the debtor already had prior to her filing of bankruptcy. The consequences of adopting either method can be stated as follows: "[t]he first construction would greatly limit the impact of the new exception under § 1129(b)(2)(B)(ii), but the second would exempt an individual chapter 11 debtor from the main facet of the absolute priority rule, allowing him or her to retain both pre- and post-petition property under a plan even though a class of unsecured creditors would not be paid in full." In re Arnold, 471 B.R. 578, 597 (Bankr. C.D. Cal. 2012) (citing In re Roedemeier, 374 B.R. 264, 274 (Bankr. D. Kan. 2007)).

While "[i]t is emphatically the province and duty of the judicial department to say what the law is[,]" the court must interpret this statutory provision in accordance with legislative intent upon the passage of BAPCPA. Marbury v. Madison, 5 U.S. 137, 177, 2 L. Ed. 60 (1803). Regardless, courts are sharply divided on this interpretation whether in the plain language view or the ambiguous

view. Courts have held that plain language view can support either the narrow or the broad view. See In re Friedman, 466 B.R. at 482 (plain language reads in support of the broad view); SPCP Group, LLC v. Biggins, 465 B.R. at 320–323 (plain language reads in support of the narrow view); In re Karlovich, 456 B.R. 677, 680-81 (Bankr. S.D. Cal. 2010). Similarly, courts have also held that an ambiguous reading supports either the broad or narrow view. See In re Shat, 424 B.R. at 867 (ambiguous reading supports the broad view); In re Gbadebo, 431 B.R. at 229 (ambiguous reading supports the narrow view).

When interpreting and applying the Code and the Rules, analysis necessarily begins with the text. Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) ("The starting point . . . is the existing statutory text."). The Supreme Court provided further guidance in two types of statutory interpretation, whether plain or ambiguous. Where the statute's language is plain, "…the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). Therefore, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut National Bank v. Germain, 503 U.S. 249, 253–254 (1992). On the contrary, where the statute's language is ambiguous, "… then, this first canon is also the last: judicial inquiry is complete." Id. (citation and internal quotation marks omitted). Specifically, "[c]ourts are to scrutinize the statute as a whole and 'not look merely to a particular clause in which general words may be used, but ... in connection with the whole statute ... and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.' " In re Lindsey, 453 B.R. at 893 (quoting Azarte v. Ashcroft, 394 F.3d 1278, 1288 (9th Cir.2005) (internal citations omitted)).

This court agrees with the courts in Arnold and Roedemeier in that taking section 1129(b)(2)(B)(ii) and section 1115 together, the interpretation could read either narrowly or broadly.

Thus the language is ambiguous as evidenced by the sharp split of courts advocating for either readings. In re Arnold, 471 B.R. 578, 598 (Bankr. C.D. Cal. 2012); In re Roedemeier, 374 B.R. at 274.

In making its inquiry, this court agrees with the Arnold court, a reading of section 1115(a) requires a grammatical analysis. In pertinent part, section 1115(a) states:

> In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—

> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and

> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. § 1115(a).

Upon examination of the subject, the predicate, the transitive verb, the direct object of the sentence[9], the Arnold court concludes that courts adopting either the broad or narrow view agree that "these assets are included as property of the estate included under section 1115 for purposes of the exception to the absolute priority rule for individual Chapter 11 debtors under § 1129(b)(2)(B)(ii)." In re Arnold, 471 B.R. 578, 600 (Bankr. C.D. Cal. 2012).

Moreover, section 1115(a) includes a third category of assets: "the property specified in section 541," which ultimately raises the question at hand of narrow or broad interpretation. The Arnold court contemplated on the grammatical meaning of the prepositional phrase "in addition to" that preceded the wording of this third category of assets. Ultimately, "[s]ince prepositions link a noun or pronoun to another word in a sentence, the question before the court is this: to what word is

the noun, "the property specified in section 541" linked in § 1115(a), i.e., "property of the estate," another noun, which reflects the broad view; or is it linked to "includes," a verb, which reflects the narrow view." Id.; 11 U.S.C. § 1115(a).

A literal reading of the sentence demonstrates that "in addition to" served as an adverbial phrase since it modifies the verb "includes" in the sentence to answer not what kind or which one but rather "to what extent is property included as property of the estate under § 1115(a)." In re Arnold, 471 B.R. 578, 602 (Bankr. C.D. Cal. 2012). This court therefore agrees with the Arnold court in that through a grammatical examination of the statutory language of section 1115, a narrow interpretation is the correct interpretation. Therefore, the absolute priority rule is applicable to individual chapter 11 debtors and therefore the rule limits the debtor's retention of property to those explicitly stated in § 1115(a)(1) and (2).

### 2. Legislative History Considerations

The legislative history of BAPCPA also strongly favors a narrow reading of section 1115. Close examination of the BAPCPA House Judiciary Committee Report demonstrated that its primary purpose is "to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors." H.R.Rep. No. 109–31, part 1 at 2 (2005), 2005 WL 832198, at *2. Therefore, the purpose of BAPCPA was really to have debtors repay more and not less. In re Friedman, 466 B.R. at 490 (Jury, J., dissenting) (citing In re Kamell, 451 B.R. at 508). This principle is reflected in the Congressional four general factors for enacting BAPCPA.[10]

---

[9]In re Arnold, 471 B.R. 578, 600 (Bankr. C.D. Cal. 2012) ("The "property of the estate" (subject) "includes" (transitive verb) all postpetition property of the debtor (direct object/collective noun) and all earnings from the debtor's postpetition services (direct object/collective noun)").

[10]BAPCPA. H.R.Rep. No. 109–3(I), part 1 at 3–5 (2005), 2005 WL 832198, at *2–3, 2005 U.S.C.C.A.N. (The congress recognized that (1) bankruptcy relief may be too readily available and is no longer used as a last resort; (2) significant losses are

Regardless, although limited, the existing legislative history indicates that a narrow view should be adopted in order to fulfill the BAPCPA's goal of fighting against opportunistic filings and abuse. Thus, this court cannot ignore the legislative intent and thereby allow the Debtor to fully abrogate the absolute priority rule for individual chapter 11 cases.

### 3. Policy Considerations

Policy considerations also weigh heavily in a narrow reading. The narrow reading fits perfectly with the policy reasoning of striking a fine-tuned balance between the rights of a chapter 11 debtor and her creditors. In re Kamell, 451 B.R. at 512. Reading section 1115 broadly discords this fine-tuned balance, the broad reading allows the debtor to engage in a cramdown without any negotiations with creditors in possibly seeking their consent and thereby soliciting their votes for a reorganization plan. In re Gbadebo, 431 B.R. at 230. In essence, the broad reading shortcuts creditors' protection under the absolute priority rule and thereby chills future lending for fiscally responsible Americans hoping for a second chance in fulfilling their American dream.

Further, reading section 1115 broadly will actively permit highly leveraged individuals ineligible of chapter 13 protection regardless of debt to file for chapter 11 reorganization to retain all of their prepetition property. This endangers the equality core of chapter 11 bankruptcy and "does unnecessary violence to well-established jurisprudence." In re Kamell, 451 B.R. at 511; In re Friedman, 466 B.R. at 490, 491 (Jury, J. dissenting) ("the broad view taken by the Panel destroys the careful balance between an individual chapter 11 debtor's interest in reorganizing and restructuring of his or her debts and the creditor's interest in maximizing the value of the bankruptcy estate.") Thus, a chapter 11 debtor is not simply a chapter 13 debtor with larger debts, rather, chapter 11

---

usually associated with bankruptcy filing and these losses are passed on to fiscally responsible Americans; (3) the present bankruptcy system has loopholes and must be revised to prevent opportunistic filings and abuse; and (4) the current bankruptcy system does not have a clear mandate requiring debtors to repay their debts.)

debtors are authorized to operate their business with possible five (5) year extensions to the benefits of unsecured creditors.  Id. at 491.

Hence, public policy weights strongly, along with a grammatical reading of the statutory language and a literal reading of the legislative language, that a narrow reading should be adopted. Therefore, this court, in an effort to preserve the integrity of the Bankruptcy Code, adopts the narrow reading of section 1115.

**B. New Value Exception**

Courts have construed the new value exception or the new value corollary to find that an interest holder in a chapter 11 debtor whose plan violates the absolute priority rule may nonetheless in some instances retain such pre-petition property interest because that interest holder provides "new value" to the debtor in the form of new capital or other similar fresh contributions. Case v. Los Angeles Lumber Prod. Co., 308 U.S. 106, 121 (1939); In re H.T. Pueblo Properties, LLC, No. 11-24718 MER, 2011 WL 6962754 (Bankr. D. Colo. Dec. 30, 2011); In re Trikeenan TileworksInc., BK 10-13725-JMD, 2011 WL 2898955 (Bankr. D.N.H. July 14, 2011).

Although the Supreme Court did not issue any guidance on whether this exception continues to exist after the enactment of the Bankruptcy Code, courts in this circuit have considered this exception under the Bankruptcy Code. In re Trikeenan Tileworks, Inc., BK 10-13725-JMD, 2011 WL 2898955 (Bankr. D.N.H. July 14, 2011); In re CGE Shattuck, 1999 BNH 046 (Bankr.D.N.H.1999). Therefore, *arguendo*, that such exception exists, the debtor must demonstrate that the contributed capital is "new, substantial [and] necessary for success of the plan, reasonably equivalent to the value retained, and in the form of money or money's worth." 203 N. LaSalle St. P'ship, 126 F.3d at 963; In re Draiman, 450 B.R. 777, 822 (Bankr.N.D.Ill. 2011). Courts have emphasized that in order for individual chapter 11 debtors to meet these requirements the new value

must come from a source other than the debtor. <u>In re Rocha</u>, 179 B.R. 305, 307 (Bankr.M.D.Fla.1995) ("The difficulty with extending the new value exception to an individual is that the new value must come from an 'outside' source, meaning it cannot come from the [d]ebtor himself."); <u>In re Cipparone</u>, 175 B.R. 643, 643 (Bankr.E.D.Mich.1994) ("The court holds that the 'new value' exception to the absolute priority rule is inapplicable because the proposed contribution comes from the debtors themselves rather than from an outside source."); <u>In re Harman</u>, 141 B.R. 878, 888 (Bankr.E.D.Pa.1992) ("We also question whether the particular property contributed by the [d]ebtors, particularly the Husband's future wages, are sufficiently 'outside' of the [d]ebtors' normal 'operations' as to constitute new value."). Summarily, the first step towards the inquiry of qualification under this exception starts with the question whether the new value must come from an outside source.

**III.     Conclusion**

Because this court adopts the narrow view of section 1115, the prepetition property is unaffected by section 1115 for purposes of section 1129(b)(2)(B)(ii) and therefore cannot be retained unless senior classes of claims are paid in full *or* unless all senior classes vote to accept the proposed plan. In her second amended Plan, the Debtor retained her interest in almost all of her prepetition assets without meeting either one of the requirements as stated above. More specifically, the Debtor proposes to leave her interest in most of the prepetition property unimpaired while upon confirmation of the Plan, to pay the general unsecured creditors a low percentage of their claims. Debtor's proposition is therefore impermissible since neither of section 1129(b)(2)(B)'s options is satisfied.

With the Debtor violating the absolute priority rule, the court subsequently examines whether the Debtor qualifies for the new value exception. The Debtor contends that her proposed new value

as provided in the Plan consists of the sale of her two vehicles. While unclear as to whether the Debtor is also contending that her post-petition wages be included, this court shall address the merit of such nonetheless. Unfortunately, none of the above are derived from a source other than the Debtor herself. Therefore, the Debtor fails to adequately fulfill the first step of the exception's inquiry, i.e. coming from an outside source.

Based on the foregoing, the Debtor fails to meet the requirements of the absolute priority rule and does not enjoy any exceptions thereto. Thus the Debtor's second amended Plan of Reorganization cannot be confirmed. Further, based on the conclusion just stated, this court will not delve unnecessarily into the merits of the other arguments raised by either party. Accordingly, approval of the Debtor's second amended Plan of Reorganization is DENIED. Debtor will show cause as to whether the captioned case should be converted or dismissed within fourteen (14) days.

SO ORDERED

In San Juan, Puerto Rico this 9th day of November, 2012.

Brian K. Tester
U.S. Bankruptcy Judge